*In re* MARRIAGE OF DEVELIA HIGHSMITH, Respondent-Appellant, and LILA R. HIGHSMITH, a/k/a Montooth, Petitioner-Appellee.

Third District   No. 3—84—0119

Opinion filed February 14, 1985.

David W. Stuckel, of Harvey & Stuckel, of Peoria, for appellant.

Michael E. Massie, of Massie & Steele, of Galva, for appellee.

JUSTICE HEIPLE delivered the opinion of the court:

The issue here is whether an Illinois court had personal jurisdiction over a nonresident respondent in an action commenced by the respondent's ex-wife seeking contempt sanctions for the respondent's failure to comply with a child support order. Both the petitioner and child are Illinois residents. In 1970, the parties were divorced in California. The respondent was given custody of the couple's minor child. In 1981, the respondent sent the child to live with respondent's parents in Illinois and sent a notarized statement with the child which purported to grant custody to the grandparents. A few months later, the petitioner located the child and obtained a court order transferring custody to the petitioner. The order also directed that the respondent pay $45 per week as child support and that he cooperate in providing medical assistance and insurance. The respondent was served out of State but did not appear in the custody modification proceedings.

In 1983, the petitioner filed for a rule to show cause in the circuit court of Henry County, based on the respondent's failure to pay child support. The respondent filed a special and limited appearance challenging the court's personal jurisdiction. The court found that it had jurisdiction over the respondent because he had sent his daughter to Illinois, designated Illinois residents as her custodians and failed to support the child as ordered. The respondent was found in contempt and was ordered to pay $3,690 as child support and $131.55 in attorney fees.

The respondent's sole argument on appeal is that the trial court lacked personal jurisdiction because his activities in Illinois did not satisfy the minimum-contacts test under the due process clause. The respondent's argument is premature.

■■ The Federal due process standard represents only the outer limits beyond which a State may not proceed to acquire jurisdiction

over nonresidents. Therefore, long-arm jurisdiction questions in Illinois are resolved first by looking to the meaning of the Illinois long-arm statute. (Ill. Rev. Stat. 1983, ch. 110, par. 2—209.) Only in those instances where section 2—209 confers jurisdiction should courts take the second step and assure that the minimum requirements of due process have been satisfied. *Green v. Advance Ross Electronics Corp.* (1981), 86 Ill. 2d 431; *Cook Associates, Inc. v. Lexington United Corp.* (1981), 87 Ill. 2d 190.

The petitioner contends that the respondent has submitted to Illinois jurisdiction by failing to support his daughter, which constitutes a tortious act pursuant to section 2—209(a)(2) of the Code of Civil Procedure of 1963 (Ill. Rev. Stat. 1981, ch. 110, par. 2—209(a)(2)). The word "tortious" as used in the statute has been held not restricted to the technical definition of a tort, but has been defined to include any act committed in Illinois which involves a breach of duty to another which makes the one committing the act liable to plaintiff in damages. (*Poindexter v. Willis* (1967), 87 Ill. App. 2d 213.) *Poindexter* involved a paternity action in which the court held that the failure of a nonresident father to support an illegitimate child in Illinois constitutes a tortious act within the meaning of the statute.

Other courts have held that a parent's failure to support his children, whether they are legitimate or illegitimate, is an actionable wrong under Illinois law. *Evink v. Pekin Insurance Co.* (1984), 122 Ill. App. 3d 246; *Donlon v. Miller* (1976), 42 Ill. App. 3d 64; see *Higgenbottom v. Van Veiga* (1978), 59 Ill. App. 3d 189.

The respondent argues that this court has recently declined to follow *Poindexter*, holding that nonsupport is not a tortious act under the long-arm statute. (*People v. Flieger* (1984), 125 Ill. App. 3d 604.) The respondent misinterprets *Flieger*.

In *Flieger*, we declined to follow *Poindexter* because the defendant in *Flieger* had no contact whatsoever with the State of Illinois. Therefore, asserting jurisdiction over the defendant would have violated the due process clause. Regardless of whether nonsupport was a tortious act, there was a constitutional bar to jurisdiction. We also found fault with the court's reasoning in *Poindexter*. The problem was that the court was using the breach of a parental duty to establish jurisdiction over the defendant in an action brought to determine whether or not the defendant was in fact a parent. Thus, the *Poindexter* court assumed as true that which the plaintiff was seeking to prove, *i.e.*, that the defendant was the father of the plaintiff's child. We expressed no opinion in *Flieger* as to whether non-

support is an actionable wrong under the tortious act provision of section 2—209.

■ Here, we have no doubt that the respondent has committed a tortious act. The respondent tried to avoid his parental obligations by sending his child to this State. The respondent expected that all care and support was to be furnished by the child's grandparents in Illinois, yet it is not clear whether the grandparents had consented in advance to doing so. The respondent contributed nothing to the child's support. Not only did the respondent refuse to support his child, his actions in shipping the child to Illinois were tantamount to abandonment. For purposes of the Illinois long-arm statute, the respondent has thus committed a tortious act, thereby submitting himself to the jurisdiction of the courts of this State.

■ We must next determine whether the assertion of jurisdiction in this case satisfied the requirements of due process. The respondent argues that the instant case should be governed by *Kulko v. Superior Court of California* (1978), 436 U.S. 84, 56 L. Ed. 2d 132, 98 S. Ct. 1690, wherein the court held that the minimum contacts test of due process was not satisfied by the mere presence in the forum State of a nonresident father's children.

*Kulko* is distinguishable. There, the parties were married in California and divorced in New York. The mother returned to California while the father remained in New York, where he had custody of the couple's two minor children for nine months each year. Later, both of the children, of their own volition and with their parent's consent, left their father's home in New York and moved in with their mother in California. The mother sought to increase the father's child support obligation, and the California court held that it had personal jurisdiction over the father. There was no allegation that the father was not supporting his children. The United States Supreme Court reversed, holding that the acquiescence of the father in his children's desire to live with their mother was not enough to confer jurisdiction over the father in the California courts.

In the present case, the respondent's daughter did not come to Illinois at her own request and with her mother's consent. The respondent decided that he was no longer able or no longer cared to support his child and sent her to Illinois in the hope that respondent's parents would care for her. There is nothing in the record showing that the petitioner was aware of or consented to this transfer. By placing the child with her grandparents instead of with her mother, the respondent created a situation which virtually guaranteed a custody and support dispute in the courts of Illinois. The re-

spondent cannot simply dump his child in this State and expect to avoid the consequences.

By his own design, the respondent has attempted to use this State and its residents as a means to avoid his parental obligations. Therefore, we find that the respondent's activity in connection with Illinois is sufficient to satisfy the minimum-contacts test under the due process clause. The judgment of the circuit court of Henry County is affirmed.

Affirmed.

SCOTT, J., concurs.

JUSTICE STOUDER, dissenting:

I must dissent from the majority opinion, because I do not believe that the Illinois long-arm statute (Ill. Rev. Stat. 1983, ch. 110, par. 2—209) applies under these circumstances or that sufficient minimum contacts exist here to satisfy the requirements of due process. For both reasons I would have reversed the trial court's decision that it had personal jurisdiction over the defendant.

First, I do not agree that sending his daughter to live with his parents in Illinois was "tantamount to abandonment" and, therefore, constituted a tortious act. There is no evidence that the grandparents were unwilling to take custody of the child or that they did not voluntarily support her. If we consider the failure to support the child the tortious conduct, *People v. Flieger* applies. The majority rationale in this case, like the trial court's in *Flieger*, presumes as true what the plaintiff is attempting to prove. Here, we must presume that defendant violated a legal obligation when in fact this proceeding was brought to determine what his legal obligations are. The question here is not whether this court can enforce the support order but whether the Illinois court had jurisdiction initially when it placed custody with the plaintiff and ordered the defendant to pay support. Because at that time no breach of a legal duty, *i.e.*, the duty to support the child, had occurred, I would have held that jurisdiction over defendant cannot be established by section 2—209 of the Code of Civil Procedure of 1963, because, as in *Flieger*, there was no tortious conduct.

Nor do I believe that the minimum-contacts test was satisfied in this case. Unlike the majority, I find the facts in this case nearly identical to the facts in *Kulko v. Superior Court of California* (1978), 436 U.S. 84, 56 L. Ed. 2d 132, 98 S. Ct. 1690. I would not

have held, as the majority did, that by "dumping his child in this State" he consented to the jurisdiction of Illinois courts. This is precisely what happened when the father in *Kulko* sent his daughter to California to live with her mother. I read the Illinois Supreme Court in *Boyer v. Boyer* (1978), 73 Ill. 2d 331, 340, 383 N.E.2d 223, 226, to support my position that *Kulko* denies jurisdiction when the only contact with the forum State is the fact that the ex-wife and child reside there and defendant "derived no commercial or personal benefit from [their] presence *** in Illinois." (See also *Duncan v. Duncan* (1981), 94 Ill. App. 3d 868, 419 N.E.2d 700.) Furthermore, the Illinois Supreme Court in *Boyer* declined to decide whether failure to pay support constituted a tortious act in Illinois, because the minimum contacts test of *Kulko* was not satisfied. What I find most significant in the United States Supreme Court's discussion in *Kulko* is the statement that not only could the wife "vindicate her claimed right in a New York court but also the uniform acts will facilitate both her prosecution of a claim for additional support and collection of any support payments found to be owed by appellant." (*Kulko v. Superior Court of California* (1978), 436 U.S. 84, 100, 56 L. Ed. 2d 132, 146, 98 S. Ct. 1690, 1701.) The acts referred to are the Revised Uniform Reciprocal Enforcement of Support Act. Illinois has adopted this act (Ill. Rev. Stat. 1983, ch. 40, par. 1201 *et seq.*) and has therefore manifested a substantial interest in "protecting resident children and in facilitating child-support actions on behalf of those children." (436 U.S. 84, 100, 56 L. Ed. 2d 132, 146, 98 S. Ct. 1690, 1701.) Therefore, this plaintiff could have resorted to the Uniform Act to obtain jurisdiction over the defendant, as the Illinois Supreme Court pointed out in *Boyer*. Having chosen not to do so, I believe, on the basis of the Supreme Court's holding in *Kulko* and the Illinois Supreme Court's interpretation of that holding in *Boyer v. Boyer*, that Illinois is not a "fair forum" to either force defendant to defend this action or suffer liability by default. 436 U.S. 84, 100, 56 L. Ed. 2d 132, 146, 98 S. Ct. 1690, 1701.

I would have reversed the trial court's finding that it had personal jurisdiction over the defendant.